**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA L. A.,[1] | Case No. EDCV 24-00290-AS |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| CAROLYN COLVIN,[2] Acting Commissioner of Social Security, | |
| Defendant. | |

For the reasons discussed below, the decision of the Commissioner is affirmed.

---

[1]    Plaintiff's name is partly redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]    On November 30, 2024, Carolyn Colvin became the Acting Commissioner of Social Security, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Martin O'Malley as the defendant in this case.

1
2

**PROCEEDINGS**

3       On February 6, 2024, Plaintiff filed a Complaint seeking
4 review of the Commissioner's denial of Plaintiff's applications
5 for disability insurance benefits and supplemental security income
6 under Titles II and XVI, respectively, of the Social Security Act.
7 (Dkt. No. 1). On April 8, 2024, Defendant filed an Answer consisting
8 of the Administrative Record ("AR"). (Dkt. No. 12). The parties
9 subsequently filed opposing briefs setting forth their respective
10 positions regarding Plaintiff's claims ("Pl. Brief" and "Def.
11 Brief"). (Dkt Nos. 15, 17-18). The parties have consented to
12 proceed before a United States Magistrate Judge. (Dkt. Nos. 7-8).

13
14       The Court has taken this matter under submission without oral
15 argument. See C.D. Cal. C. R. 7-15.

16
17       **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

18
19       On October 28, 2016, Plaintiff filed applications for
20 supplemental security income and disability insurance benefits,
21 alleging disability since April 1, 2016. (AR 165-75). Plaintiff's
22 applications were denied, initially on February 6, 2017, and on
23 reconsideration on December 13, 2017. (AR 60-86). On September 13,
24 2019, Plaintiff, who was represented by counsel, testified at a
25 hearing before Administrative Law Judge ("ALJ") Thomas D. Businger.
26 (AR 29-59). ALJ Businger also heard testimony from vocational
27 expert ("VE") Sandra Trost. (AR 47-55). On October 22, 2019, ALJ
28 Businger denied Plaintiff's applications. (AR 15-23).

The Appeals Council denied Plaintiff's request for review on June 29, 2020 (AR 1-5), and Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. See Cynthia L. A. v. Saul, C.D. Cal. Case No. EDCV 20-01557-AS. On December 16, 2021, the Court remanded the matter for further proceedings upon the parties' stipulation that an ALJ take further action to develop the record and issue a new decision. (Id., Dkt. Nos. 31-33; AR 588-94).

Following this Court's remand order, on June 22, 2022, the Appeals Council vacated ALJ Businger's decision and remanded the matter to an ALJ to receive additional evidence and issue a new decision further considering Plaintiff's subjective testimony and statements because the prior decision had provided inadequate rationale for discounting Plaintiff's testimony and statements. (AR 598-601). Plaintiff underwent an internal medicine consultative examination on October 31, 2022 and submitted additional medical records.[3] (AR 745-853). On July 26, 2023, ALJ Josephine Arno held a hearing and received testimony from Plaintiff, who was represented by counsel, and VE Stephen Davis. (AR 531-59). On November 30, 2023, ALJ Arno issued a partially favorable decision finding that Plaintiff became disabled on March 19, 2022, but was

---

[3]   (1) Internal Medicine Consultative Examination, dated October 31, 2022 to November 17, 2022,  by Dr. Greene; (2) Office treatment records dated June 17, 2019 to November 21, 2019 from Loma Linda; (3) Office treatment records, dated March 19, 2022 from Arrowhead Orthopaedics, and Office treatment records, dated October 16, 2019 to March 24, 2023, from Dr. Thomas. (AR 745-853).

not disabled prior to that date. (AR 511-23).

ALJ Arno applied the requisite five-step process to evaluate Plaintiff's case. (AR 512-23). At step one, ALJ Arno found that Plaintiff had not engaged in substantial gainful activity since the October 18, 2016 application date. (AR 514). At step two, ALJ Arno found that Plaintiff has the following severe impairments: obesity, diabetes, and bilateral knee osteoarthritis. (AR 514). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 515).

Next ALJ Arno found that (1) prior to March 19, 2022, Plaintiff had a residual functional capacity ("RFC")[4] for medium work[i] as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except that she was able to stand and walk for six hours a day and sit for six hours a day. (AR 515-20 (adopting limitations consistent with the medical opinion evidence predating March 19, 2022, and rejecting Plaintiff's subjective statements and testimony suggesting greater limitations)); and (2) since March 19, 2022, Plaintiff had a RFC for a full range of light work[5] as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), based on the updated medical record, including a treatment note from Arrowhead Orthopedics dated March

---

[4]     Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

[5]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

4

19, 2022 (see AR 808-10), and Plaintiff's subjective statements and testimony. (AR 520-21).

At step four, ALJ Arno found that Plaintiff did not have past relevant work. (AR 521). At step five, based on Plaintiff's age, education, work experience, RFC, and the VE's testimony, ALJ Arno determined that prior to March 19, 2022, Plaintiff could perform certain medium, unskilled jobs. (AR 521-22 (relying on VE testimony at AR 549-57)), and that beginning March 19, 2022, Plaintiff would be disabled under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the Grids") Rule 202.04, given her age, education, work experience, and RFC. (AR 523).

Plaintiff now seeks judicial review of ALJ Arno's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation and internal quotation omitted).

1    To determine whether substantial evidence supports a finding,

2    "a court must consider the record as a whole, weighing both evidence

3    that supports and evidence that detracts from the [Commissioner's]

4    conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir.

5    2001) (internal quotation omitted). As a result, "[i]f the evidence

6    can support either affirming or reversing the ALJ's conclusion, [a

7    court] may not substitute [its] judgment for that of the ALJ."

8    Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

9

10                              **DISCUSSION**

11

12    Plaintiff contends that substantial evidence does not support

13    ALJ Arno's determination that Plaintiff's condition substantially

14    changed only as of March 19, 2022.  Plaintiff asserts that the

15    medical evidence is not consistent with the ALJ's finding that

16    Plaintiff's RFC "suddenly" changed. (Pl. Brief at 4-12). Plaintiff

17    also contends that ALJ Arno failed properly to consider Plaintiff's

18    testimony and statements suggesting that she had greater

19    limitations than ALJ Arno found to exist prior to March 19, 2022.

20    (Id. at 12-19).

21

22    After consideration of the record as a whole, the Court finds

23    no reason to remand this matter.  The ALJ's decision is supported

24    by substantial evidence and free from material error.[6]

25

26    _____

27        [6]  The harmless error rule applies to the review of
    administrative decisions regarding disability. See McLeod v.
28    Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,

6

**A.**    **Summary of the Relevant Medical Record**[7]

Plaintiff reported that she started having left knee pain when she was 16 years old from a "birth defect" for which she had arthroscopic surgery. (AR 246, 302, 320, 322, 748). She denied any residual issues after her surgery despite having a leg length discrepancy (AR 246, 302), and there are no records for treatment until 2016.

In October 2016, eight months after Plaintiff's alleged onset date, Plaintiff went to the emergency room complaining of right knee pain for the past eight months. (AR 309). She had mild pain, minimal tenderness, and normal strength in her right knee. (AR 411). Plaintiff was diagnosed with chronic right knee pain (likely "OA" (osteoarthritis)), and prescribed Norco. (AR 310).

In November 2016, Plaintiff followed up with a provider at the Riverside University Health System, requesting Norco for her pain due to it causing "significant stress" in her life (e.g., she had closed two of her antique shops due to pain and swelling with walking). (AR 413). She had mild edema and mildly decreased range of motion in her right knee. (Id.; see also AR 446 (October, 2016 right knee x-ray showing mild degenerative joint disease)).

---

400 F.3d 676, 679 (9th Cir. 2005) (An ALJ's decision will not be reversed for errors that are harmless).

[7]    Since the issues in this case arise from ALJ Arno's consideration of Plaintiff's asserted knee pain and related limitations, the Court has focused on the medical record addressing these concerns.

Plaintiff was diagnosed with chronic right knee pain, referred to an orthopedic surgeon, and ordered to continue with Naproxen and "RICE" (rest, ice, compression and elevation). (AR 414). In December 2016, Plaintiff saw an orthopedist, who noted mild right knee pain and minimal tenderness but normal strength on examination, diagnosed right knee osteoarthritis, and referred Plaintiff for physical therapy. (AR 416; see also AR 447-48 (December, 2016 right knee x-ray similar to the prior study showing mild degenerative disease)). Plaintiff returned four days later requesting that her providers complete disability forms for her right knee pain, asserting worsened pain with prolonged standing, limited range of motion, and weakness that caused her to fall. (AR 418). An examination revealed some right knee pain and tenderness, full range of motion with pain, and no edema. (AR 419). Her provider declined to complete disability paperwork because Plaintiff had "not gone through any sessions of [physical therapy] or tried any other alternative treatments." Id.

On January 10, 2017, Plaintiff attended a physical therapy session, reporting intermittent and worsening right knee pain with walking. (AR 421). Three days later, she returned to her doctor and requested disability paperwork which was again denied because she "has only had one session of [physical therapy]." And was advised to continue conservative measures with muscle strengthening, physical therapy, NSAIDs, and warm compresses. (AR 425-26). Plaintiff did not show up for her next physical therapy appointment on January 13, 2017, but attended physical therapy sessions on January 31, and February 2, 2017. (AR 427-35).

On February 7, 2017, Plaintiff went to the emergency room complaining of chest pain onset during her third physical therapy appointment. (AR 327-28). On examination, she reportedly had normal range of motion and no joint tenderness or edema, and walked without difficulty. (AR 327-28, 342, 350). Earlier that day, Plaintiff had seen her orthopedist who discontinued Plaintiff's physical therapy until cleared by her primary doctor. (AR 436-37).  On February 22, 2017, Plaintiff reported that she could not tolerate physical therapy because it makes her "feel sick," and refused an injection for pain. (AR 439-41).

On January 24, 2017, orthopedic consultative examiner, Dr. Herman Schoene, evaluated Plaintiff. AR 319-23). Plaintiff complained of sudden-onset right knee pain from "considerable arthritis" since April 2016, which had gradually progressed, and back pain for which she was taking Advil. (AR 319-20). Dr. Schoene's examination revealed that Plaintiff had normal posture, gait and station, normal range of motion, no crepitus, no tenderness, no laxity, and normal motor strength. (AR 321-22). Bilateral knee x-rays showed "moderate" osteoarthritis, left worse than right. (AR 322).  Dr. Schoene diagnosed right knee arthralgia and opined that Plaintiff would be capable of medium work consistent with ALJ Arno's RFC determination for the period prior to March 19, 2022. (AR 322-23; see also AR 60-86 (state agency reviewers' findings, in February and December, 2017, that Plaintiff would be capable of medium work consistent with ALJ Arno's RFC determination).

In March 2017, a right knee x-ray showed degenerative changes with a small joint effusion, and deformity in the lateral tibial plateau which "may be" from an old fracture injury. (AR 365). In April 2017, Plaintiff was referred to an orthopedist. (AR 361, 363).

In July 2017, Dr. Paul Burton at Arrowhead Orthopedics evaluated Plaintiff. (AR 378-79, 389). Plaintiff reported intermittent, moderate groin, low back, and knee pain only with activity (overuse, walking) for the past two years, with mild swelling, catching, and giving way without pain with pivoting. (AR 389). Plaintiff was not taking any medications at that time. (AR 383, 389). Plaintiff was observed to have normal gait and station and could transfer with "relative ease," but also had demonstrated discomfort, tenderness in her knees but no soft tissue swelling, full range of motion with crepitus, and positive McMurray test on her right knee. (AR 390-91). Knee x-rays showed bilateral joint space narrowing, and a small osteophytic spur in the right knee. (AR 391).

Dr. Burton diagnosed right knee pain with "probable" patellofemoral arthritis in both knees, but requested an MRI to rule out a medial meniscus tear or other process. (AR 391). Plaintiff followed up in October 2017, reporting continued right knee pain. (AR 384). Examination findings were unchanged from the prior visit. (AR 384-85). In August 2017, an MRI showed degenerative arthrosis and Dr. Burton diagnosed bilateral knee osteoarthritis with degenerative lateral meniscus tear in the right

knee for which he recommended "conservative" management starting with an injection. (AR 385; see also AR 452-53 (MRI report)).

The next available treatment notes for Plaintiff's knee pain are from October 2019, and August 2021, when Plaintiff requested, and was granted, a referral to Arrowhead Orthopedics for her worsening knee pain. (AR 812-15). However, Plaintiff did not return to Arrowhead Orthopedics until March 19, 2022 – the date on which ALJ Arno found that Plaintiff's RFC changed from medium to light work. (AR 808-10). Plaintiff reported that her worsening knee pain had been present for more than two years and came on slowly. (AR 808). She also believed that her pain was not serious enough to consider having surgery. (Id.). Plaintiff was not taking any medication besides Advil for her pain at that time and had not had any diagnostic tests for about two years. (Id.). On examination, she had an antalgic gait, moderate difficulty transferring from chair to standing and standing to the examination table, but full range of motion. (Id.). X-rays showed "early osteoarthritis." (Id.). Plaintiff's orthopedist found that Plaintiff was "not a candidate for knee replacement surgery and will do her very best to accept and live with" her pain and use Advil. (Id.).

On October 31, 2022, Internal medicine consultative examiner, Dr. Robert Greene, reviewed some medical records and examined Plaintiff. (AR 747-53). Plaintiff complained of bilateral knee

osteoarthritis, low back pain, diabetes, and fatty liver. (AR 747).[8] An examination revealed normal gait and balance, decreased lumbar spine range of motion, and normal range of motion in Plaintiff's knees with no instability or tenderness (AR 749-51). Dr. Green diagnosed bilateral knee osteoarthritis, low back pain, diabetes, and fatty liver, and opined that Plaintiff would be capable of a range of medium work with walking and standing limited to four hours a workday, and occasional postural activities. (AR 751-53; see also AR 754-59 (Dr. Green's Medical Statement of Ability to Do Work-Related Activities (Physical) form)).

**B.    Substantial Evidence Supports ALJ Arno's RFC Assessments.**

Plaintiff contends that substantial evidence does not support ALJ Arno's decision regarding Plaintiff's RFC assessment for the period before March 19, 2022. See Pl. Brief at 4-12. The Court disagrees. As summarized above, all of the medical opinions in the record found limitations consistent with (or lesser than) ALJ Arno's RFC determinations. Compare AR 515, 521 (ALJ Arno's RFC determinations) with AR 60-86, 322-23, 751-59 (medical opinions finding Plaintiff capable of a range of medium work). ALJ Arno appropriately relied on the medical opinions in the record, see 20

_____

[8]    In 2001, Plaintiff's doctor had noted that Plaintiff had liver and kidney problems with excessive fluid retention secondary to Motrin. (AR 267). She was diagnosed with fatty liver in February 2019. (AR 471-98).

C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and Plaintiff does not argue to the contrary.

Plaintiff claims that the record does not support a finding that Plaintiff's condition materially changed as of March 19, 2022, and argues that ALJ Arno arbitrarily chose this date. (Pl. Brief at 12). In finding a material change in Plaintiff's RFC, ALJ Arno reasoned that, unlike the Arrowhead Orthopedics treatment note dated March 19, 2022, examinations of Plaintiff's knees prior to March 19, 2022, did not show difficulty with changing positions or with ambulation.  As set forth above, the record supports ALJ Arno's reasoning.

It is Plaintiff's burden to produce evidence to support her disability claim. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)(as amended). Here, Plaintiff did not seek treatment for, or evaluation of, her knee pain after August 2017 until she returned to Arrowhead Orthopedics on March 19, 2022 (after this Court's prior remand).  Thus, there simply was nothing in the record for ALJ Arno to review to support the degree to which Plaintiff's assertedly "worsening" knee pain worsened between August 2017 and March 2022.

ALJ Arno's reliance on the March 19, 2022 treatment note (and Plaintiff's latest testimony and statements about her limitations) to support her finding of a material change in Plaintiff's deteriorating condition as of that date is supported by substantial evidence in the record. See AR 518-21 (ALJ Arno's discussion of

the updated medical record and Plaintiff's statements). Accordingly the Court finds no basis for a remand on this basis.

C.  **The ALJ Gave Legally Sufficient Reasons Supported by Substantial Evidence for Discounting Plaintiff's Testimony and Statements.**

Plaintiff contends that ALJ Arno did not provide legally sufficient reasons for discounting Plaintiff's testimony and statements suggesting greater limitations than what ALJ Arno found for the period prior to March 22, 2022. Plaintiff suggests that the ALJ relied only on the asserted lack of supporting medical evidence to reject Plaintiff's testimony and statements. See Pl. Brief at 13-19.  The record belies Plaintiff's claim.

1.  **Applicable Law**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Garrison</u>, 759 F.3d at 1014. "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original) (citation omitted). "Nor must

14

a claimant produce objective medical evidence of the pain or
fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no
evidence of malingering, the ALJ must provide specific, clear and
convincing reasons for rejecting the claimant's testimony about
the symptom severity. Id. at 1014-15; see also Robbins, 466 F.3d
880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings as
to credibility and stating clear and convincing reasons for
each."). "This is not an easy requirement to meet: The clear and
convincing standard is the most demanding required in Social
Security cases." Garrison, 759 F.3d 995, 1015 (9th 2014)(citation
omitted). The ALJ must evaluate "the intensity and persistence of
those symptoms to determine the extent to which the symptoms limit
[the claimant's] ability to perform work-related activities for an
adult." SSR 16-3p, 2017 WL 5180304, at *3.

While the ALJ cannot "delve into wide-ranging scrutiny of the
claimant's character and apparent truthfulness," Trevizo, 871 F.3d
664, 678 n.5 (9th 2017), the ALJ may consider "prior inconsistent
statements concerning the symptoms, and other testimony by the
claimant that appears less than candid; unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and the claimant's daily activities." Ghanim
v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).
Inconsistencies between a claimant's testimony and conduct, or

internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted); see also Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (reaffirming same but observing that inconsistency with the medical evidence is a factor that can be considered); SSR 16-3p, 2017 WL 5180304, at *5 ("Objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities. . .").

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (citation omitted)). Although an ALJ's

interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2.    Plaintiff's Testimony and Statements

At the September 2019 hearing before ALJ Businger, Plaintiff testified that she could not work due to problems with both of her knees which she said needed to be replaced. (AR 39). She stated that her knees swell and she had to elevate her feet or use ice packs a couple times a day. (AR 41-42). She said she spent her days taking care of herself, sometimes watching her grandchildren, and helping a "little bit" with housework like laundry which she can do sitting down. (AR 43-44). She could drive no more than 30 to 40 minutes before needing to place ice packs on her knees. (AR 46).

In an Exertion Questionnaire dated November 9, 2016, Plaintiff had reported that her knees swell and she has arthritis pain preventing her from standing too long or walking too much. (AR 200-02). She sometimes wore a knee brace. (AR 202). She noted that walking at Costco for 30 minutes causes her knee to swell and hurt. (AR 200). She could go to the grocery store twice a week, make her bed, dust, and do laundry, and drive a car depending on her pain. (AR 200-01). She required rest once a day for 30 minutes to 1.5 hours. (AR 202). Plaintiff also reported in a Work History form dated May 23, 2017, that her back hurts and her knees swell and the pain prevents her from working. (AR 208).

At the July, 2023 hearing before ALJ Arno, Plaintiff testified that her knees had gotten "way worse" and "swell very easily." (AR 540). She said that her knees worsened in part due to gaining 40 pounds in the last couple of years. (AR 548-49). She would ice them or take Advil or elevate her legs. (AR 541). She did not think she could stand for half a day as Dr. Greene had opined; she could only stand or walk for 15 minutes before her knees would swell and start to hurt. (AR 541). She said it had been "years" since she could go all day without elevating her legs. (AR 542). She said she could lift up to 15 pounds. (AR 543). She could clean her house as long as she could sit down and not do it "straight through." (AR 544). She was taking Advil and had been offered Norco but she was "not much of a pill taker." (AR 544).

### 3.   Analysis

ALJ Arno found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with ALJ Arno's RFC assessments and with the medical record. (AR 516). ALJ Arno reasoned that, for the period before March 19, 2022, the medical record revealed: (1) very limited evidence of any swelling in Plaintiff's knees at the severity or frequency Plaintiff alleged, and "very little to no evidence" of deficits in range of motion, antalgic gait, or knee effusion and swelling (AR 516-19 (citing AR 320-22, 361, 384-85, 389-91, 411, 413, 419, 421-42, 480, 502)); (2) Plaintiff had "generally

conservative treatment" for her knee pain from October 2016 through October 2017, and no treatment from 2018 through 2021 (AR 516-18 (citing AR 411, 813)); (3) diagnostic findings prior to March 22, 2022, generally indicated only mild degenerative changes (AR 516-18 (citing AR 365, 446, 448)); and (4) no medical source statements endorsing the extent of Plaintiff's alleged functional limitations (AR 517; see also AR 60-86, 322-23, 751-59 (medical opinions)). ALJ Arno also noted that, in June 2019, Plaintiff reported that she was exercising by walking four or five times a day for eight minutes each time if her knee did not bother her, which contradicted Plaintiff's testimony that she experienced knee swelling if she was on her feet for even short periods of time. See AR 517 (citing AR 761). The record supports these findings.

ALJ Arno provided clear and convincing reasons, supported by substantial evidence in the record, to support her RFC determination for the period prior to March 19, 2022.[9] As set forth above, a lack of corroborating objective medical evidence is relevant to an ALJ's evaluation of a claimant's statements, so long as the ALJ does not reject statements solely on that basis. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (where "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain")

---

[9]     ALJ Arno accounted for Plaintiff's claimed limitations for the period after March 19, 2022, by limiting her to light work which rendered her disabled after that date. (AR 521).

(citing <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986)); <u>see also</u> <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 498 (9th 2022) ("When objective medical evidence in the record is <u>inconsistent</u> with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis original); <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1209, 1227 (9th 2009). Here, ALJ Arno's reliance on the lack of supporting medical evidence was not the sole basis for rejecting Plaintiff's testimony.

As set forth above, ALJ Arno cited the observations of medical examiners that were inconsistent with Plaintiff's claimed limitations. (AR 516-19). Plaintiff claimed to suffer from daily knee pain and swelling when she stood and walked (AR 41-42, 541), yet her doctors observed little-to-no swelling on repeated examinations (AR 342, 350, 390-91, 413, 419).

ALJ Arno also relied on Plaintiff's inconsistent statements about her ability to walk to discount Plaintiff's claim regarding her functional limitations.  An ALJ may rely on inconsistencies in a claimant's statements or between a claimant's testimony and the conduct to discount symptom testimony. <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) ("the ALJ may consider inconsistencies in the claimant's testimony or between the testimony and the claimant's conduct"), <u>superseded on other grounds by</u> 20 C.F.R. § 404.1502(a); <u>Papa v. Berryhill</u>, 872 F.3d 901, 906-07 (9th Cir. 2017) ("An ALJ may consider inconsistent statements by a claimant in assessing her credibility.").  Here, ALJ Arno noted, (at AR 517), that in June 2019, Plaintiff reported that she

could walk for exercise four to five times a day when her knee does not bother her which suggested that Plaintiff was more functional than she alleged for the period before March 19, 2022. Compare AR 200, 202 (Plaintiff reporting in November 2016 that she could not walk too much or her knee would swell, and she could not mop or vacuum due to back and knee pain) and AR 541 (Plaintiff testifying, in July 2023, that she has trouble when she stands or walks for long periods of time or for more than 15 minutes) with AR 761 (Plaintiff reporting, in June 2019, her walking exercise).

ALJ Arno's reasoning is sufficiently specific for the Court to conclude that ALJ Arno did not arbitrarily discount Plaintiff's testimony. ALJ Arno adequately explained why the record did not support Plaintiff's claimed limitations. See AR 516-20; compare Brown-Hunter, 806 F.3d at 493 (finding fault with ALJ's conclusion that the claimant's limitations were less than alleged where the ALJ merely summarized the medical record without explaining why it undermined the claimant's allegations).

Because ALJ Arno discounted Plaintiff's testimony on legally permissible grounds and ALJ Arno's reasoning is supported by substantial evidence, the Court will defer to ALJ Arno's interpretation of the evidence. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) ("court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by 'specific findings justifying the decision'").

**ORDER**

    For the foregoing reasons, the decision of the Commissioner is affirmed.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 3, 2025

                                         _____
                                          /s/
                                          ALKA SAGAR
                            UNITED STATES MAGISTRATE JUDGE

_____